Sam GOLDBERG, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Sam GOLDBERG and Estate of Evelyn
Goldberg, Sam Goldberg, Execu-
tor, Petitioners.

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 16024.

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1956.

Joseph B. Brennan, William R. Patterson, Atlanta, Sutherland, Asbill & Brennan, Atlanta, of counsel, for petitioners.

Sheldon I. Fink, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Marvin W. Weinstein, Robert N. Anderson, I. Henry Kutz, John Potts Barnes, Ch. Cnsl., Int. Rev. Serv., Rollin H. Transue, Special Atty., Washington, D. C., for respondent.

Before CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The Commissioner of Internal Revenue determined deficiencies of income taxes of Sam Goldberg and his wife Evelyn Goldberg (now deceased) for the years 1939 through 1942, for which joint returns were filed, and of Sam Goldberg for 1943, for which a separate return was filed. Fraud was found and fraud penalties were imposed. With some adjustments, the Tax Court sustained the Commissioner's findings. Sam Goldberg, in his own right, and as executor of Evelyn Goldberg, Deceased, has sought a review of the Tax Court's decisions. Sam Goldberg will be herein referred to as the petitioner and Evelyn Goldberg will be called the decedent. The findings of the Tax Court in its unreported opinion have been carefully summarized in the brief of the Commissioner. Borrowing heavily from it, we outline the sequence of events which bring this appeal before us.

The petitioner and the decedent were engaged in the business of operating coin amusement machines, mainly juke boxes, but with some slot machines. These were placed in stores, taverns, and clubs, and other establishments in southeastern Georgia and South Carolina. During the years in question the petitioner had machines in areas near military bases and shipyards. The petitioner employed collectors who visited the locations of the machines and, in the presence of the owner or operator of the establishments, unlocked the machines and turned over to the owner his agreed share of the proceeds. The petitioner also employed a number of maintenance and repair men who either serviced the machines in petitioner's shop or at the location. The collectors and repair men incurred travel expenses for which they were reimbursed. The petitioner and his son frequently made collections. The decedent took care of the books and records. She made all the entries except for a period of one month. She had taken a course in commercial bookkeeping at New York Evening High School for Women and had worked some as a bookkeeper. The Tax Court found that she had a good knowledge of the principles of bookkeeping. The books consisted of collections and disbursements books kept on the cash method of accounting on a calendar-year basis, utilizing a single-entry system of bookkeeping. The tax returns were prepared by an accountant from the information supplied by the decedent. He did not audit the books or verify the information. The collectors checked in periodically with decedent (or, on occasion, with the petitioner who in turn would report to decedent) and accounted for the amount collected, less expenses. Periodically, the decedent would enter such amounts in a collections book kept for that purpose. The amounts as shown by this record were reported in the tax returns. Travel expense, salaries and other expenses were entered in a disbursements book. Substantially all the expenses were business expenses some of which were held not deductible, but there were a few tax payments entered which were not related to the business. Deductions were disallowed in an amount exceeding $20,000.

The petitioner contests the disallowance of about two-thirds of the total.

A checking account used for the business was maintained at the Citizens and Southern National Bank, Liberty Street Branch, Savannah, Georgia. The Tax Court found it was impossible to reconcile, from the books, cash with the bank account, so as to ascertain what portion of the receipts was deposited or what portion was expended or withheld without being deposited. The returns in question include a cost of goods sold computation involving the amusement machines and automotive equipment used by the petitioner in his business. None of the machines or equipment were held for purposes of resale except some phonograph equipment of which the petitioner made five sales for a total of $4,000 and gross profits of $653.58. The average useful life of the machines and equipment was three years. In the years 1940 to 1942, the petitioner and decedent received income which they failed to report from the estate of the petitioner's father, in the total amount of $336.42, and, in 1942, they failed to report a gain from the sale of timber of $1,500. In 1943, the petitioner failed to report income from the aforementioned estate of $140.75 and from the sale of auto equipment on which there was a gain of $109.-67. Prior to and during the years in question, the petitioner operated a number of slot machines. In 1937 he pleaded guilty to the illegal operation of slot machines in Georgia, and in 1940 he pleaded guilty to two similar charges. In 1923 the petitioner was criminally indicted for failure and refusal to make income tax returns and pleaded guilty. In 1929, the United States obtained a judgment of $50,000 for civil income tax liabilities against the petitioner, based upon his offer to compromise such liabilities. In 1923, the petitioner was criminally indicted five times (one indictment included 40 counts) for violation of the National Prohibition Act, 27 U.S.C.A. § 1 et seq. He pleaded guilty to four of the five indictments and was found guilty on all five. During the years 1916 to 1937, inclusive, he was on several occasions charged with violation of the criminal laws of Savannah, on some of which he was found guilty and sentenced.

The net income as shown by the petitioner and the decedent, and as determined by the Commissioner, was as follows:

|  | Returned | Determined |
| --- | --- | --- |
| 1939 | $ 2,845.64 | $11,721.40 |
| 1940 | 3,282.17 | 17,688.89 |
| 1941 | 9,152.69 | 36,276.94 |
| 1942 | 16,469.04 | 30,608.24 |
| 1943 | 23,135.12 | 47.595.62 |

The figures shown for 1939 through 1942 are for the petitioner and the decedent jointly. The 1943 figures are for the petitioner only and show the victory tax figures. The income tax figures are slightly less both as returned and as determined. Most of the increase in taxable income as determined by the Commissioner resulted from computations made by the so-called "Cash expenditures method". This method of reconstructing income is an extension or outgrowth of the net worth method. It starts with a valuation at the beginning of the period of the taxpayer's assets. If that which has been spent exceeds that which has been reported as received the inference is justified that the difference is unreported income. It is not an accurate method and its results are at best approximations. Its use is permitted where the taxpayer's records are so inadequate as to require that resort be had to some other means of reaching a determination. See Mertens, Federal Income Taxation, § 12.12.

The Commissioner, by an amended answer, sought to increase the deficiency for 1943 as originally asserted by more than $12,500 on the basis of a larger amount of unreported business receipts. The Commissioner's use of the cash expenditures method of income determination was approved by the Tax Court as was his determination of deficiencies and

penalties. The Tax Court approved the Commissioner's disallowance of certain deductions for travel, legal and miscellaneous expenses, as well as a part of the claimed deductions for taxes. It sanctioned petitioner's claim for increased depreciation allowances for amusement machines and automotive equipment, subject to adjustment for an estimated salvage value. The Tax Court found fraud as to each year and that Section 6 of the Current Tax Payment Act of 1943, 57 Stat. 126, 26 U.S.C.A. § 1622 note, did not apply. The Tax Court rejected the claims for refunds for the years 1940, 1941 and 1943, and determined deficiencies in income tax and 50 per cent fraud penalties against the petitioner and decedent. The petitioner and decedent's estate filed petitions for review in this Court and these were consolidated into one cause by an order of this Court. The petitioner makes two contentions in opposing the finding of the tax deficiencies. By one of these he asserts error in the reduction of depreciation on equipment so as to reflect a salvage value at the end of the depreciation period. The other objection to the determination is a criticism of the Commissioner's application of the cash expenditures method.

■■ The Treasury Regulations applicable to the tax years with which we are here dealing contain this provision:

"Depreciation.—A reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business, or treated under section 29.23 (a)-15 as held by the taxpayer for the production of income may be deducted from gross income. For convenience such an allowance will usually be referred to as depreciation, excluding from the term any idea of a mere reduction in market value not resulting from exhaustion, wear and tear, or obsolescence. The proper allowance for such depreciation is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), whereby the aggregate of the amount so set aside, plus the salvage value, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property determined in accordance with section 113." Reg. 111, § 29.23 (1)-1.

The Tax Court held that there was a salvage value of ten per cent. of cost of both motor vehicles and coin operated equipment at the end of a three-year depreciation period. It was apparent that the equipment had value in excess of what it would bring as scrap or junk. The Tax Court so found, and found the percentage of the salvage value. The right to a deduction is a matter of legislative grace and the taxpayer has the burden of showing the right to the deduction and the extent of it. Kilpatrick v. Commissioner of Internal Revenue, 5 Cir., 1955, 227 F.2d 240. This burden the petitioner did not carry. The Tax Court's decision finding and fixing the extent of salvage value is not clearly erroneous.

■ The petitioner argues that the Commissioner's computation by the cash expenditures method was arbitrary and inaccurate, that the petitioner and the decedent must have had substantial funds on hand at the beginning of the period, and that the expenditures during the period might have been made from previously accumulated funds. We need not review the facts and the conflicts of evidence and the differences between the inferences drawn by the petitioner on the one hand and the Commissioner on the other. We find nothing that deprives the Commissioner's determination of the usual presumption of correctness. The burden of showing the Commissioner was wrong rested upon the petitioner. To the extent he demonstrated errors in the Commissioner's computation he was given relief by the Tax Court. To be sure the Commissioner had the burden of

proof as to the additional tax for 1943 sought in his amended answer filed in the Tax Court. On conflicting evidence the Tax Court resolved the factual issues against the petitioner. There was ample to sustain the Tax Court's finding. The determination of the tax deficiencies by the Tax Court are not shown to be clearly erroneous.

■■ As to the fraud penalty which the Commissioner sought to impose under 26 U.S.C.A. (I.R.C. 1939) § 293(b) there are no presumptions of correctness attaching to the Commissioner's findings. The Commissioner has the burden of proving fraud by clear and convincing evidence. The Tax Court predicates no small part of its fraud findings upon the inference that the decedent was a skilled bookkeeper. This inference is based upon the fact that she took a course in bookkeeping in New York. The failure to retain permanently supporting documents, the absence of a general ledger with investments, receivables and payables accounts and the use of a single-entry method rather than a double-entry method of bookkeeping are used as factors to lead the Tax Court to infer that the books and records were inaccurate and unreliable and to conclude that such condition was not due to negligence alone but the result of premeditated design. Although the existence of fraud may be gathered from circumstances, the piling of inference upon inference hardly qualifies as the clear and convincing evidence by which fraud must be proved. Books of the business activities were kept. They were designed to show the funds coming in and the money paid out. Accurately kept with supporting data such records would be, in most small businesses, an adequate source of all information needed for ascertaining the amount of the taxable income of the business. Mertens, Federal Income Taxation, § 55.11.

The Tax Court found that the large amounts of unreported income each year are evidences of fraudulent intent to evade the tax. The amounts of under-stated income would not have been large but for the inclusion of unreported business receipts. These amounts, included in the tax deficiency computations of the Commissioner and hence entitled to a presumption of correctness, are relied upon, if not as primary evidence of fraudulent intent, then as corroborative of the intent to evade taxes, it being conceded that in each year there was an omission of taxable income from the returns. Whether there was, absent the presumption of correctness of the Commissioner's determination, any adequate proof that business income was under-stated may be doubtful. It was not established by clear and convincing evidence. The omissions may evidence negligence but they do not disclose fraudulent intent. Mertens, Federal Income Taxation, § 55.11.

Even so, it is urged, there were in each year admitted taxable income receipts which were not reported in the returns. If any part of the deficiency be due to fraud, the whole is subject to the penalty. The items which the petitioner concedes were omitted, and the years when received, are as follows:

| Source | Year | Amount |
| --- | --- | --- |
| Income from Estate of | | |
| Petitioner's father | 1940 | $ 62.93 |
| " | 1941 | 136.12 |
| " | 1942 | 137.37 |
| " | 1943 | 140.75 |
| Gain from sale of timber | 1942 | 1,500.00 |
| Gain from sale of automobile | 1943 | 109.67 |

Because, as the Tax Court inferred, the decedent was a skilled bookkeeper, the Commissioner urges that the failure to report these items is persuasive evidence of fraudulent intent. The funds received from the estate of the petitioner's deceased father were not of such size as to affect materially the amount of the petitioner's tax. The bookkeeping skills of the decedent, such as they were, do not impute to her a knowledge that income of an estate which is to be distrib-

uted currently is taxable to the heir or legatee, 26 U.S.C.A. (I.R.C. 1939) § 162(b), and a fraudulent intent for omitting it.

It may be that the decedent knew the methods of reporting gains on the sale of timber and computing the tax on such gains. 26 U.S.C.A. (I.R.C. 1939) § 117 (k). We think it unlikely. It might be possible that the decedent believed money so received to be a return of capital free from income taxation. Perhaps it was overlooked through inadvertence. There is no evidence to show it was done with a fraudulent intent. Nothing appears to show that the failure of the taxpayer to report the gain of $109.67 on the sale of an automobile was due to anything other than oversight. Another peg which the Tax Court used for supporting its conclusions of fraud is the recurrence, year after year, of improper deductions in the returns. The only improper deductions of consequence which were recurring were taxes, travel, legal and other expenses not itemized. The travel expense was disallowed because there was not adequate proof to establish it. As to the legal expense the Tax Court disallowed the deduction and said "For aught the record shows, some, if not all, of the legal expenses involved might very well have been, and probably were incurred in defending criminal actions against petitioner or his employees or securing their release from custody, or in regaining possession of slot machines which had been confiscated." These inferences were made by the Tax Court in sustaining the tax deficiencies where the petitioner had the burden of proof and the Commissioner had benefit of a pre-

sumption. They can hardly be regarded as showing or tending to show a specific fraudulent intent to evade income taxes.

The matters mentioned and the other circumstances reflected in the record do not, singly or in the aggregate, meet the measure of proof which is required on the fraud issue. The fraud which the Commissioner was required to prove to sustain the penalty is actual and intentional wrongdoing with a specific intent to evade the tax. Mitchell v. Commissioner of Internal Revenue, 5 Cir. 1941, 118 F.2d 308. It is never imputed or presumed, and findings of fraud should not be sustained upon circumstances which at most create only suspicion. Olinger v. Commissioner of Internal Revenue, 5 Cir. 1956, 234 F.2d 823; Davis v. Commissioner of Internal Revenue, 10 Cir. 1950, 184 F.2d 86; Mitchell v. Commissioner of Internal Revenue, supra. The stressing of the petitioner's criminal record and his previous brushes with those charged with the duty of collecting Federal taxes indicate that possibly, in the language of Chief Judge Hutcheson, "The case on the issues where the burden was on the commissioner was presented and tried too much on the theory, 'Give a dog an ill name and hang him.'" Olinger v. Commissioner of Internal Revenue, supra [234 F.2d 824].

The determination of the tax deficiency is affirmed. We find no substantial evidence to sustain the finding of fraud by the Tax Court. For a redetermination of the tax without the fraud penalties each of the decisions here consolidated is

Reversed and remanded.