George Kleinman, et al. [1] v. Commissioner. Kleinman v. Commissioner
Docket Nos. 88709-88711.
United States Tax Court
T.C. Memo 1963-153; 1963 Tax Ct. Memo LEXIS 190; 22 T.C.M. (CCH) 727; T.C.M. (RIA) 63153; June 4, 1963
*190 Held, deficiencies determined by the net worth plus personal expenditures method barred by the statute of limitations. Morris K. Siegel, and Morris M. Silverman, 10 E. 40th St., New York, N. Y., for the petitioners. Joseph F. Rogers, and Eugene Parker, for the *191 respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: In these consolidated cases the respondent determined deficiencies in the income tax of petitioners and additions to tax under section 293(b), Internal Revenue Code of 1939, for fraud, under section 294(d)(1)(A) for failure to file declaration of estimated tax, and under section 294(d)(2) for substantial underestimate, as follows: Additions to Tax, I.R.C. 1939
Docket
Sec.
Sec. 294
Sec.
No.
Year
Deficiency
293(b)
(d)(1)(A)
294(d)(2)
88711 (George)
1944
$1,439.37
$ 719.69
1945
2,310.34
1,155.17
$198.97
1946
3,597.57
1,798.79
305.97
1947
2,132.82
1,066.41
181.36
88709 (Lee)
1946
383.00
191.50
32.57
1947
1,402.10
701.05
119.18
88710 (George and Lee)
1948
3,176.20
1,588.10
289.05
1949
3,758.94
1,879.47
328.17
1950
184.26
92.13
$13.35
1951
798.50
399.25
40.80
The respondent, by amended answer, reduced the amounts of the deficiencies as to some of the years involved. The deficiencies were determined by the net worth plus personal expenditures method. The correctness of the computation has been *192 stipulated except for the inclusion as income of the petitioners of savings accounts in the name of Bernard Kleinman and cash transferred from Bernard Kleinman. The petitioners dispute these items and also the additions to tax, and allege that the statute of limitations is applicable. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners were husband and wife in the taxable years and have since been divorced. George filed individual income tax returns for the years 1944 through 1947. Lee filed individual returns for 1946 and 1947. They filed joint returns for the years 1948 through 1951. Their returns for the years involved were filed with the collector of internal revenue at Brooklyn, New York, except for 1946, for which year returns were filed with the collector at Phoenix, Arizona. Lee filed separate returns and reported income for the years 1946 and 1947 solely by reason of the community property laws of Arizona and California. Accordingly, her liability for the deficiencies and additions to tax for those years, as well as her joint liability for the years 1948 to 1951, inclusive, will be controlled by our findings with respect to *193 George. For convenience, George Kleinman sometimes will be referred to hereinafter as the petitioner. Petitioner's parents, Bernard and Rebecca Kleinman, lived at 741 E. 5th Street, New York City, from the 1900's until the mother's death in 1929. In 1930, petitioner, his father, and his unmarried sister, Sylvia, moved to an apartment at 1806 - 48th Street, Brooklyn, New York. At about the same time, petitioner's married sister, Tessie Rosenberg, moved to a different apartment at the same address. Petitioner's father lived at that address until his death in 1954. Bernard's apartment rented for $25 or $30 in 1930, and consisted of one bedroom, a living room, an efficiency kitchen, a bathroom, and a foyer. Petitioner's mother died in 1929 at the age of 48. For some 15 years prior to her death she had worked as a salesclerk. Her estate was valued at $568. Petitioner's father, Bernard, died in 1954 at the age of 77. From 1937, or earlier, until his death his regular employment was as a dress machine operator, a semiskilled occupation. His total income for 1945-1951, as reported on his income tax returns, consisted of earnings, interest, and insurance and totaled $16,946.85. His social *194 security record showed earnings of $28,349.96 for the period 1937 through 1951. Petitioner was born in 1909. He was a graduate of the City College of New York and received a certificate as a graduate in accounting. He was admitted to practice as a certified public accountant in New York in 1936 or 1937. Petitioner was employed by the Internal Revenue Service as a revenue agent from 1935 until 1951, his pay scale ranging from $2,600 to $7,440 annually. He was married in 1936. His wife was a housewife during the taxable years. They had two daughters. During this time his sister Sylvia was also employed by the Internal Revenue Service. In a financial statement filed in 1935 upon entering the Internal Revenue Service, petitioner stated his net worth as $350 and listed his father as a dependent. In 1943 the petitioner sought a selective service hardship exemption and represented that his father was partially dependent upon him. He did not claim his father as a dependent on his income tax returns. In 1944 and 1945 George and Lee and their children lived in Brooklyn, New York. In 1946 they moved to Phoenix, Arizona. They later moved to Los Angeles, California, and in 1947 they returned *195 to Brooklyn. While in Phoenix they bought a house, taking title in Lee's name. While in Los Angeles they bought a house there and disposed of the Phoenix residence. They disposed of the Los Angeles house and later purchased one in Rockville Centre, Long Island, New York. In October 1951 the Treasury Department issued an order requiring certain employees of the Internal Revenue Service, including revenue agents, to file a financial statement by December 1, 1951. The petitioner resigned his position effective about December 1, 1951, and did not file the requested financial statement. The Internal Revenue Service investigated the petitioner's financial affairs and learned of the existence of savings accounts in the name of Bernard. In 1952 the petitioner was called as a witness before the subcommittee of the House Ways and Means Committee investigating Internal Revenue Service administration, and there refused to submit the financial statement requested by that subcommittee or to answer questions. Petitioner was indicted under section 145(b), Internal Revenue Code of 1939, for filing a false and fraudulent income tax return for 1949, and was subsequently acquitted of this charge. *196 United States v. Kleinman, 167 F. Supp. 870 (E.D.N.Y., 1958). In connection with this criminal proceeding, the special agent examining petitioner's returns for possible sources of income from graft interviewed 200 or 300 persons whose returns petitioner had audited as an Internal Revenue Agent. None of those interviewed was called to testify before the grand jury. From 1924 Bernard continuously maintained a bank safe deposit box. Sylvia was Bernard's sole deputy since 1944, with rights of entry and access, and at no time did petitioner have such rights. In 1941 Bernard suffered a heart attack on the street and was removed to a hospital where attendants found $1,000 in cash on his person. From 1944 to 1949 Bernard opened six savings bank accounts in his name. Except for a few days in April and May 1949, no more than two of these were open at the same time. The following shows the names of the savings banks, the opening and closing dates of each account, and the total amount deposited thereto: Total
Bank
Opened
Closed
Deposits
Bay Ridge
7/31/44
3/18/47
$19,600.00
S. Brooklyn
1/ 6/45
3/18/47
6,825.00
Greenwich
3/18/47
5/ 5/49
12,690.30
Dime
3/18/47
5/ 5/49
10,800.00
Union Dime
4/12/49
8/27/51
2,550.00
Franklin
4/26/49
8/29/51
2,050.00
*197 The last two accounts subsequently were transferred to a seventh account, opened in late 1951. All deposits to these accounts were made over Bernard's signature, as were all withdrawals. Deposits were usually made weekly, and always in cash except for one insurance check for $990.30 and two or three small checks from other sources. Deposits were usually made in even amounts of $200 to $500. There was deposited in these various accounts $54,515.30 which, with accrued interest, amounted to $55,071.75. A total of $22,790.30 was deposited while George was working in Phoenix, Arizona, and in Los Angeles, California, in 1946 and 1947. All withdrawals from these accounts were made by Bernard by check, generally made payable to his order and then indorsed by him. Bernard began withdrawing funds from his various accounts in February 1945, and continued to do so until May 1949. He transferred these funds to George. A total of $50,408.93 was withdrawn by Bernard and transferred to George or to savings or checking accounts variously styled under petitioner's, his wife's, or his children's names. Of this amount, none was spent for or paid over to either of petitioner's two sisters, and $49,808.93 *198 of it was spent by the petitioner as follows: $ 8,380.00
Securities purchased and transferred to George
2,600.00
Savings accounts in children's names Used to buy Phoenix house
7,000.00
Lee Kleinman checking account
8,179.14
Savings accounts in children's names
Used to buy Los Angeles house
5,000.00
George and Lee's savings accounts
5,834.79
Cash withdrawn directly from Bernard's Used to buy Rockville Centre house
account
12,815.00
Ford automobile, cemetery plot, U.S. bonds, savings accounts
There were other transfers of money from Bernard to George, and the funds were invested by George for benefit of himself or his family. Bernard Kleinman did not file an income tax return until 1942. His returns were prepared by George. For the years 1942 to 1951 Bernard's returns reported a small liability for three years, no liability for three years, and an overpayment for one year. He filed no returns for the other years. Opinion The deficiencies relate to the calendar years 1944 to 1951. The notices of deficiency were mailed in 1960. The petitioners plead the bar of the statute of limitations, section 275(a) of the Internal Revenue Code of 1939. The respondent *199 alleges that the returns of the taxpayers were false and fraudulent with intent to evade tax and that accordingly assessment may be made at any time under authority of section 276(a) [2] of that Code. The burden of proving whether the petitioners have been guilty of fraud with intent to evade tax is upon the respondent. Section 1112, I.R.C.
The substance of the respondent's contentions is that the unreported income on which the deficiencies are based was money transferred to George Kleinman from his father, Bernard, in the taxable years; that this was money which George had acquired and turned over to his father; and that George had acquired the money by accepting bribes from taxpayers whose returns he was assigned to investigate and that he concealed the receipt of the money by having *200 his father deposit it in the latter's savings accounts and return it from time to time as George wanted it. The amount of unreported income determined consists of deposits in saving accounts of Bernard Kleinman later transferred to George amounting to $55,071.75 and additional cash transferred by Bernard to George amounting to $18,608.24, a total of $73,679.99. The petitioner explains the transactions as involving money which his father had saved during a long life of frugal living and steady employment. Bernard had a safe deposit box since 1924 when he was about 47 years old. According to the petitioner, his father had a heart attack in 1941 and was taken to a hospital, at which time it was discovered that he had $1,000 in cash on his person, and Bernard explained that he was taking it to the bank. George goes on to say that he suggested to his father that the latter deposit his money in savings accounts to earn interest; that his father expressed fear of banks, remembering bank failures in the past, and that George assured his father that bank accounts were now insured; that subsequently his father opened savings accounts; and that George advised against depositing a very large *201 sum at any one time since the banks might report it because the Treasury Department was on watch for black market operations, and hence his father made frequent deposits of moderate sums. George explains the transfer of funds to him as occasioned by his father's desire to have George accept the responsibility of caring for the money and using it for the benefit of his two sisters and himself and that the money was transferred from time to time in amounts small enough to avoid incurring liability for gift tax. The respondent attacks the foregoing explanation in several particulars. The first argument is that Bernard could not have saved such an amount. The social security records show earnings of Bernard for the years 1937 through 1951 amounted to $28,349.96 or about $1,900 per year, or for the period 1945 through 1951 averaged $2,420 per year. Bernard's only known employment was as a dress machine operator. The respondent argues that it would have been impossible for Bernard to have saved the money which went into his bank accounts. Secondly, since George admitted that none of the money was used for the benefit of his sisters but all was used for George or his wife or daughters and *202 included purchase of a home at various places where they lived, for an automobile, and for securities, the respondent argues that the money must have been George's and was put into his father's savings accounts only to conceal the fact that George had acquired it. The respondent also points out a number of facts as tending to discredit the petitioner's veracity, namely, that he resigned from the Internal Revenue Service rather than furnish a net worth statement demanded of its employees; that he refused to testify before a committee of the Congress investigating the Service; that he claimed his father as dependent, or partially dependent, on him in 1935 and in 1943; that in buying a home in Phoenix he had title taken in his wife's name; and that although he was acquitted in the criminal trial for tax evasion, the court expressed the opinion that his explanation was unlikely and contradictory and provided the basis for its own refutation. The respondent's evidence that the petitioner secured this income from bribes is limited to one case which occurred in 1941 in which it is said he attempted to obtain a bribe from a taxpayer, Barney Brainum, whose returns the petitioner was assigned *203 to investigate. Brainum testified that the investigators found an altered invoice in the records; that the petitioner told the taxpayer this was a serious thing; and that he understood the petitioner to offer to "soft pedal" his report if paid a bribe, at first demanding $1,500 and later $3,000. The respondent argues that this evidence proves that the petitioner was willing to accept bribes and that bribes from other taxpayers must have been the source of the unreported income. The witness in the instance shown stated positively that he paid nothing to the petitioner. The respondent's agents made inquiries of some 300 taxpayers whose returns had been examined by the petitioner during his service as a revenue agent, and no witness was called to show an admitted payment of a bribe or any other case of an attempt. In Davis v. Commissioner, 184 F. 2d 86 (C.A. 10, 1950), it is stated (p. 87) that - Fraud implies bad faith, intentional wrong doing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion. And in Goldberg v. Commissioner, 239 F. 2d 316 *204 (C.A. 5, 1956), the court commented that the piling of inference upon inference hardly qualifies as the clear and convincing evidence by which fraud must be proved. See, also, Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941); Olinger v. Commissioner, 234 F. 2d 823 (C.A. 5, 1956). While petitioner's explanation as to the origin of the funds in question and the reason for and manner of their transfer to his control appear unlikely and improbable, we agree with the remarks of the District Court in the criminal case ( United States v. Kleinman, supra), at p. 877: Here, while it must be said that the Court cannot give credence to the defendant's claims, the Court is not satisfied that the improbabilities inherent in the defendant's explanation which bar acceptance of his claims amount to clear and convincing evidence that the funds in question originated with the defendant, that is, that Bernard Kleinman merely held the accounts as the agent or proxy of his son. With the burden of proof on the respondent the evidence of fraud presented is not sufficient to establish that the petitioners' returns were false and fraudulent with intent to *205 evade tax. There is nothing more than suspicion shown. This is not the clear and convincing evidence required to prove fraud. Accordingly, collection of the deficiencies in tax and additions to tax is barred by the statute of limitations, and it becomes unnecessary to determine the amounts of the deficiencies. Decisions will be entered for the petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Lee Cohen, formerly known as Lee Kleinman, Docket No. 88709; and George Kleinman and Lee Cohen, formerly known as Lee Kleinman, Docket No. 88710.↩
2. All references to Code sections are to the Internal Revenue Code of 1939. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.↩