T.C. Memo. 1997-261


UNITED STATES TAX COURT


ANTHONY J. MARZULLO AND MARY P. MARZULLO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15219-94.                    Filed June 11, 1997.


<u>L. Paige Marvel</u> and <u>Joyce K. Becker</u>, for petitioners.

<u>Clare J. Brooks</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, <u>Judge</u>:   Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes:

| | | Additions to Tax | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
| 1986 | $13,549 | --- | $428 | 1 | --- | $ 3,740 | 2 | $3,387 |
| 1987 | 27,024 | --- | 88 | 1 | --- | 18,941 | 2 | 6,756 |
| 1988 | 19,611 | $73 | --- | --- | $13,617 | --- | --- | 4,903 |

1 50 percent of the interest due on the portion of the underpayment attributable to negligence under sec. 6653(a)(1)(B).

2 50 percent of the interest due on the portion of the underpayment attributable to fraud under sec. 6653(b)(1)(B).

The deficiencies in this case arise primarily from respondent's determination that petitioners omitted income from two separate and distinct sources: (1) From Mr. Marzullo's salary at the College of Notre Dame (sometimes referred to as the College), and (2) from income generated by MPM Productions, an unincorporated business, and MPM Productions, Inc., a subchapter S corporation owned jointly by petitioners (both businesses referred to as MPM).[1] Respondent determined that both petitioners were aware of the two sources of omitted income, and that both petitioners intentionally omitted the two sources of income to defraud the Government. Thus, respondent determined the fraud penalty against both Mr. and Mrs. Marzullo for the omission of income from both sources.

Petitioners concede the deficiency, except for the amount attributable to self-employment tax relating to the income of MPM subsequent to August 31, 1987. Petitioners further concede that Mr. Marzullo is liable for the fraud additions to tax for 1987 and 1988 and the negligence additions to tax with respect to the

---

[1] In addition to the omitted income, respondent disallowed a substantial portion of claimed itemized deductions for each of the years under consideration.

disallowed itemized deductions. They contest: (1) Mr. Marzullo's liability for the fraud addition to tax for 1986; (2) Mrs. Marzullo's liability for tax, claiming that Mrs. Marzullo is an innocent spouse; (3) the self-employment tax; and (4) Mrs. Marzullo's liability for the fraud addition to tax. Thus, the issues for decision are: (1) Whether Mrs. Marzullo is entitled to relief as an innocent spouse pursuant to section 6013(e); (2) whether Mrs. Marzullo is liable for self-employment tax relating to income from MPM subsequent to August 31, 1987; and (3) whether Mr. Marzullo is liable for the fraud addition to tax for 1986, and whether Mrs. Marzullo is liable for the fraud additions to tax for 1986, 1987, and 1988.

All section references are to the Internal Revenue Code as in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner Anthony J. Marzullo is herein referred to as Mr. Marzullo and petitioner Mary P. Marzullo as Mrs. Marzullo. Together they are referred to as petitioners.

                          FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners, husband and wife, resided in Glen Arm, Maryland, at the time they filed their petition. Petitioners timely filed joint Federal income tax returns for 1986, 1987, and 1988, the

years under consideration. Mr. Marzullo prepared petitioners' tax returns.

Mr. Marzullo obtained a bachelor's degree in accounting from Loyola College in 1962, and a master's degree in business administration from Loyola College in 1981. From 1962 to 1980, he was employed as a staff accountant with a C.P.A. firm, an accounting manager, an accounting coordinator at Johns Hopkins Hospital, and assistant controller at Good Samaritan Hospital. In 1980, Mr. Marzullo became the chief financial officer at the College of Notre Dame, a women's college in Baltimore, Maryland, and remained in that position during all of the years under consideration.

Petitioners were married in 1962. After working as a secretary, Mrs. Marzullo stayed at home for several years to care for petitioners' four sons and then began part-time college studies in 1971. She obtained a bachelor's degree in communications from Towson State University in 1981; after graduation, she obtained employment with Westinghouse Defense. That employment lasted 1 year. She then was employed as a training-media producer by Reliable Stores. That employment lasted approximately 4 years. Later, she started her own business, a video production business known as MPM Productions, which she operated from petitioners' residence.

Bifurcated Salary

The College of Notre Dame waived tuition for students whose parents were college employees. Petitioners could not take advantage of the tuition waiver benefit because they had sons and the College admitted women only.

Mr. Marzullo wanted to receive a benefit that was similar to the tuition waiver. He also wanted to structure his compensation package with the College to mitigate, at least to some degree, the loss of benefits he had been receiving from his previous employer. To achieve these results, Mr. Marzullo devised a bifurcated salary arrangement for himself, in which only a portion of his income was paid as salary and reported by the College to the Internal Revenue Service (IRS) on a Form W-2. The balance of his compensation was transferred to an accounts payable account that normally was used for nontaxable employee reimbursement. That part of his compensation (which was not reported to the IRS on a Form W-2) was paid to Mr. Marzullo or to third parties for Mr. Marzullo's benefit. Mr. Marzullo used the unreported money to pay for such things as credit card bills for a family vacation, bills for his life and disability insurance premiums, and his sons' tuition. The payments classified to the accounts payable account which were omitted from petitioners' Federal income tax returns were:

| Year | Amount |
|------|--------|
| 1986 | $12,322 |
| 1987 | 29,296 |
| 1988 | 21,542 |

Mr. Marzullo established the bifurcated salary arrangement sometime after he joined the College in 1980. It was approved by the College president, Sister Kathleen Feeley; at that time, she did not realize that tax consequences were involved.

In 1989, Mr. Marzullo's staff accountant at the College, Susan Carapico, confronted him about the need to issue a Form 1099 for the benefits Mr. Marzullo had received. He described his attitude toward this salary arrangement in a conversation he had with her as follows:

> she came in and she said, "I looked down and I saw this other benefits." She said, "I'm going to have to give you a 1099 on these other benefits." I said, "Susan, I really don't think that's right, you know. I don't know why I have to be paying tax on the money, you know, that I'm using for tuition and health insurance. It just doesn't make any sense to me." We talked about it for a couple of minutes and I said, "How come people that are here that are getting free tuition, how come they are not being taxed?"

Mr. Marzullo obtained check requisition forms from Sister Feeley that she had signed in blank. Mr. Marzullo used the forms to obtain payments through the accounts payable account, listing the purpose of the payments as "car allowance". Other forms he signed himself and listed such things as "payment of benefit reimbursement", "expense allowance", or "tuition reimbursement" as reasons for issuance of checks.

In 1987, Mr. Marzullo received an automobile from the College as a bonus. He knew that it constituted taxable income but intentionally omitted the value of the automobile from his tax

return, contending that he could not afford to pay the tax due thereon because of financial difficulties.

The College offered as an employee benefit a matching pension plan whereby it would match its employee's contribution up to 5 percent of the employee's salary. Mr. Marzullo participated in this plan and had the matching contribution calculated on the entire amount of his salary, not just on the amount paid to him as salary and reported as such on his Form W-2. He determined his total salary by adding the omitted income from the accounts payable account to the amount paid directly to him as salary. But he did not include as part of his salary the cost of medical benefits received.

Mr. Marzullo listed the entire amount of his bifurcated salary when applying for a loan. On April 29, 1986, Mr. and Mrs. Marzullo signed a loan application in which it was stated that Mr. Marzullo's annual salary was $60,000. On February 8, 1988, Mr. and Mrs. Marzullo signed a loan application in which Mr. Marzullo's gross monthly income was listed as $5,250 (which would total $63,000 per year) and Mrs. Marzullo's gross monthly income was listed as $3,666 (rounded) or $43,992 per year.

Form 1099

Patricia Grega, the College's director of computer services, discovered that Mr. Marzullo was receiving payments from the accounts payable account in August 1988, when auditors were doing a fiscal year audit of the College. The business office was

responsible for designating whether a Form 1099 should be issued for various payments by the College. Ms. Grega noticed that the payments Mr. Marzullo received had not been designated as requiring issuance of a Form 1099. She met with the business office manager and the person responsible for payroll to discuss the matter. Shortly after the meeting, Mr. Marzullo telephoned Ms. Grega and asked why she was inquiring about the payments. Ms. Grega testified:

> It seemed fairly obvious why I was doing it; I mean, those were the procedures that we had to follow. I explained again what I was trying to do and asked him if there was anyone at the college who met these criteria such that something should be reported for them, and he said, no, I should not worry about that, that there were no other benefits, no fringe benefits, no other compensation to report. * * * He seemed upset with me.

Mr. Marzullo was Ms. Grega's supervisor. She issued the College's tax information to the IRS for 1988 and certified its accuracy, as he instructed her to do. She was concerned, however, about the omission of the payments to Mr. Marzullo, and in this regard, spoke with Ms. Carapico, the College's staff accountant, in March 1989. Ms. Carapico believed the payments should be reported to the IRS. Ms. Grega and Ms. Carapico then took the matter up with Sister Feeley.

Sister Feeley instructed Mr. Marzullo to terminate the bifurcated salary arrangement in 1986 because no other employee was being paid in that manner. Moreover, another chief officer had just been hired, and Sister Feeley wanted both Mr. Marzullo and the

newly hired chief officer to be treated equally. When Sister Feeley learned from Ms. Grega and Ms. Carapico that Mr. Marzullo was still taking payments from the accounts payable account, she contacted Mr. Marzullo, who then terminated the arrangement. A Form 1099 reporting payments Mr. Marzullo received from the account was issued for 1989.

Mr. Marzullo knew that the payments from the accounts payable account were taxable, and he deliberately did not have the omitted income included in the payroll account and on his Form W-2. Criminal charges were filed against Mr. Marzullo in 1992, and he pleaded guilty to tax evasion for 1987 in the U.S. District Court for the District of Maryland.

Video Production Business

Mrs. Marzullo started MPM, a video production business, in January 1987. MPM was operated as a sole proprietorship until August 31, 1987, when it was incorporated. Mrs. Marzullo received 51 percent of the stock and Mr. Marzullo received 49 percent, although the business essentially belonged to, and was operated by, Mrs. Marzullo.

Mrs. Marzullo had experience in the production of videos before starting her own business. She made contacts with potential customers and submitted proposals for video production jobs. She determined the price to be charged for each contract. When she acquired a contract, Mrs. Marzullo wrote the script, produced and directed the video, and supervised every aspect of its preparation.

Mrs. Marzullo prepared all invoices and kept track of whether checks in payment of the invoices had been received.  If an invoice was not paid, she would contact the customer concerning payment. When checks were received, she gave them to Mr. Marzullo, who deposited the checks, paid the bills, and kept a record of income and expenses.  His participation in the business was essentially clerical. Mrs. Marzullo sometimes made corrections to Mr. Marzullo's records.  Mr. Marzullo did not deal with customers and had no knowledge of the video production business.

Petitioners used their personal checking account for MPM's business checks and deposits.  MPM was operated from petitioners' residence, and the business paid no salary or commissions. Mrs. Marzullo obtained a business phone number, corporate stationery, and business cards.

MPM elected S corporation status.  It filed a Form 1120S return for the period September 1 to December 31, 1987, but in 1988 petitioners filed a Schedule C reporting MPM's activities with their return.  Petitioners' Form 1040 for 1988 stated that Mrs. Marzullo was self-employed.

Petitioners understated the gross receipts of MPM on their Federal income tax returns as follows:

| Year | Actual Receipts | Reported Receipts |
|------|-----------------|-------------------|
| 1987 | $71,750 | $14,900 |
| 1988 | 44,722 | 19,682 |

Respondent increased the expenses attributable to MPM's operations

by $24,794 for 1987 and decreased them by $4,068 for 1988.

OPINION

## Issue 1.  Innocent Spouse

The adjustments giving rise to the deficiencies (the understatement) fall into three categories:  Unreported income of Mr. Marzullo from his employment at the College; understated income of MPM; and disallowed itemized deductions.  Mrs. Marzullo contends that she is not liable for the understatement attributable to any of these items because she qualifies for tax relief as an innocent spouse pursuant to section 6013(e).

Spouses who file a joint return generally are jointly and severally liable for its accuracy and the tax due, including any additional taxes, interest, or penalties determined on audit of the return.  Sec. 6013(d)(3).  However, pursuant to section 6013(e), a spouse (commonly referred to as an innocent spouse) can be relieved of tax liability if that spouse proves:  (1) A joint return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) it would be inequitable to hold the relief-seeking spouse liable for the deficiency attributable to the understatement.  Sec. 6013(e)(1).  The spouse seeking relief bears the burden of proving that each of the four requirements has been satisfied.  In other words, failure to prove any one of the statutory requirements will

prevent innocent spouse relief.  <u>Bokum v. Commissioner</u>, 94 T.C. 126, 138-139 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

MPM Income

We first consider Mrs. Marzullo's entitlement to relief with respect to the understatement resulting from the understated income of MPM.  Respondent concedes the first statutory requirement--that a joint return was filed--was satisfied.[2]

The second requirement is that the understatement is "attributable" to the income of the other spouse (in this case, Mr. Marzullo).  Respondent asserts that the understatement resulting from the entire understated income of MPM should be attributable to Mrs. Marzullo, claiming that MPM should be viewed as a sole proprietorship, with Mrs. Marzullo the proprietor. As would be expected, petitioners disagree with respondent's position, asserting instead that the corporate identity of MPM should be respected for tax purposes. Further, petitioners counter respondent's argument by claiming that all the unreported income of MPM should be attributable to Mr. Marzullo because he had an ownership interest in MPM and was the one who intentionally understated MPM's gross receipts and net profits.

While we agree with respondent's position that MPM's unreported income (the grossly erroneous item) should be

---

[2]     Although petitioners claim that Mrs. Marzullo did not sign the 1986 and 1987 tax returns, they do not disclaim the fact that those returns are in fact joint returns.

attributable to Mrs. Marzullo for purposes of section 6013(e)(1)(B), we do not do so on the basis that the corporate identity of MPM should be disregarded. Rather, we sustain respondent's determination because it was Mrs. Marzullo who generated MPM's income, with only modest assistance from Mr. Marzullo. Thus, we conclude that the understatement resulting from the understated income of MPM should be attributed entirely to Mrs. Marzullo.

In reaching our conclusion, we believe it appropriate to analogize MPM's income to community property income. With regard to community property, unreported income may be "attributable" for purposes of section 6013(e) to the spouse whose substantial services were required to generate the income. See Allen v. Commissioner, 514 F.2d 908, 913 (5th Cir. 1975), affg. in part and revg. in part 61 T.C. 125 (1973); Grubich v. Commissioner, T.C. Memo. 1993-194. In the instant matter, although Mr. Marzullo owned 49 percent of MPM's stock, his involvement in producing the income of the business was limited in comparison to the role played by his wife. In addition, we give more weight to control than to stock ownership in deciding the spouse to which income from a family business should be attributed for purposes of section 6013(e). See Meyer v. Commissioner, T.C. Memo. 1996-400.

Mrs. Marzullo should not receive the benefits of innocent spouse relief to avoid tax on her own business income. Accordingly, Mrs. Marzullo is not entitled to innocent spouse relief with

respect to the understated income of MPM.

<u>College of Notre Dame Income</u>

We next turn to Mrs. Marzullo's innocent spouse claim with respect to the understatement resulting from the unreported income from the College. In this regard, respondent concedes that Mrs. Marzullo satisfied the first two elements of the statute. See sec. 6013(e)(1)(A) and (B).

Mrs. Marzullo claims that she had no actual knowledge or reason to know of the unreported income from the accounts payable account. See sec. 6013(e)(1)(C). We accept this claim. Mrs. Marzullo had been married to Mr. Marzullo since 1962. She credibly testified that when she married Mr. Marzullo, their marriage partnership quickly evolved into a division of labor where Mr. Marzullo was responsible for the family financial affairs and Mrs. Marzullo cared for their home and children. Mrs. Marzullo trusted Mr. Marzullo to properly handle the family's financial affairs. It was not until Mr. Marzullo's criminal investigation in 1992 that Mrs. Marzullo realized Mr. Marzullo had failed to report all taxable income he received from the College.

Respondent asserts that Mrs. Marzullo must have known about Mr. Marzullo's unreported income from the College because she knew of the College's tuition waiver policy for female children of employees and regretted that her sons could not benefit from the waiver. The logic of respondent's assertion is flawed. Although Mrs. Marzullo knew about the tuition waiver policy of the College

for its employees, it does not follow that she must have known about the unreported income from the College. The unreported income received from the College was not that of Mrs. Marzullo. She did not negotiate the arrangement with the College. On the basis of her background, and having observed Mrs. Marzullo while testifying, we do not believe that she knew or had any reason to know that Mr. Marzullo received income from the College that he did not report on their joint tax returns.

Since the third of the four requirements of section 6013(e) has been met, we now must decide whether it would be inequitable to hold Mrs. Marzullo liable for the deficiency attributable to the understatement with respect to the unreported income from the College. Sec. 6013(e)(1)(D). In this regard, the focus is on whether Mrs. Marzullo (the spouse seeking relief) benefited from the understatement. See Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); Terzian v. Commissioner, 72 T.C. 1164, 1170-1171 (1979). "Normal support" is not a significant benefit. Sec. 1.6013-5(b), Income Tax Regs. We conclude she did not benefit from the understatement.

Petitioners contend that the tax savings benefited their four sons, who had "very healthy appetites, substantial clothing expenses, and private school tuition bills", rather than Mrs. Marzullo, who "did not own expensive jewelry, antiques, or other extravagant items". We find that petitioners' standard of living did not significantly increase as a result of the tax

understatement and conclude that it would be inequitable to hold Mrs. Marzullo liable for the understatement of tax on her husband's unreported income from the College.  Accordingly, Mrs. Marzullo is entitled to innocent spouse relief as to Mr. Marzullo's unreported income from the College.

### Disallowed Itemized Deductions

Finally, we turn to Mrs. Marzullo's innocent spouse claim with respect to the understatement resulting from the disallowed itemized deductions.  The record with respect to this issue is scant.  No evidence was presented as to the spouse (Mr. and/or Mrs. Marzullo) to whom the disallowed deductions are attributable or whether the deductions are "grossly erroneous items" as defined in section 6013(e)(2).  Thus, petitioners failed to prove all the elements necessary for Mrs. Marzullo's entitlement to innocent spouse relief with respect to the understatement resulting from the disallowed itemized deductions.  Accordingly, we sustain respondent's determination in this regard.

### Issue 2.  Self-Employment Tax

Respondent determined that petitioners owe self-employment tax under section 1401 on MPM's income, contending that the video production business was operated as a sole proprietorship, and that the corporate form should be disregarded.  Petitioners claim that the business was operated as a partnership prior to its incorporation on August 31, 1987, and that from August 31, 1987, MPM was a corporation.  Petitioners assert that MPM's corporate

form should be respected.

In support of the argument that the corporate form should be disregarded, respondent points out that petitioners did not open a separate checking account for the corporation, used stationery that did not have the corporate name, and filed a Schedule C with their 1988 tax return reporting MPM income as income from a sole proprietorship. Petitioners claim that a Schedule C was used in 1988 because they did not have the correct forms. Respondent cites Noonan v. Commissioner, 52 T.C. 907 (1969), affd. 451 F.2d 992 (9th Cir. 1971), for the proposition that "if a corporation is simply a shell and cannot establish that it was formed for any significant nontax business purpose, its existence will be disregarded for tax purposes even though it may be validly incorporated under state law". Respondent cites other cases involving sham transactions.

Petitioners incorporated MPM on the advice of counsel in order to limit their personal liability, a significant business purpose. MPM was a small, newly formed business operated from petitioners' residence. Although petitioners might not have followed every corporate formality, and despite petitioners' use of Schedule C to report MPM's income, we conclude that MPM was incorporated for a proper purpose and operated as an entity which should be respected for tax purposes. See Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943). Accordingly, we hold that Mrs. Marzullo is not liable for self-employment tax on the income of MPM after August 31, 1987.

Issue 3.  Fraud

Respondent determined fraud additions to tax against both Mr. and Mrs. Marzullo pursuant to section 6653(b) for each of the years under consideration.  Mr. Marzullo has conceded the fraud additions for 1987 and 1988 but contests the imposition of the fraud addition for 1986.  Mrs. Marzullo contends that she is not liable for the fraud additions for any of the years under consideration.

To prevail, the Commissioner must prove fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  The Commissioner cannot satisfy the burden of proving fraud simply by piling inference upon inference.  Goldberg v. Commissioner, 239 F.2d 316, 320 (5th Cir. 1956), revg. and remanding T.C. Memo. 1954-242.  The Commissioner must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes.  Parks v. Commissioner, 94 T.C. 654, 661 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).

Fraud is never presumed.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  A taxpayer's sophistication, education, and intelligence may be considered in determining whether or not he had fraudulent intent.  See Halle v. Commissioner, 175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946); Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

Fraud cannot be imputed from one spouse to another.  Hence, in the case of a joint return, where fraud is asserted against a

spouse, the Commissioner must prove that some part of the underpayment of tax is due to the fraud of that spouse. Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Stone v. Commissioner, 56 T.C. 213, 227-228 (1971); see sec. 6653(b)(3). We shall first consider whether Mrs. Marzullo is liable for the fraud additions for any of the years under consideration.

Mrs. Marzullo did not sign the 1986 or 1987 tax return. Moreover, she testified that she did not review petitioners' tax returns and did not know about the omitted income. Respondent contends that Mrs. Marzullo is liable for fraud because her testimony was not credible. Respondent's burden of proof, however, cannot be satisfied simply by attacking Mrs. Marzullo's credibility. There is no evidence in the record proving that Mrs. Marzullo actually knew that income from MPM had been underreported. Further, there is no evidence in the record proving that Mrs. Marzullo knew of the omission of her husband's income from the College. We therefore hold that Mrs. Marzullo is not liable for the additions to tax for fraud for any of the years under consideration.

We now consider whether Mr. Marzullo is liable for the fraud addition for 1986. Petitioners argue that Mr. Marzullo should not be liable for the fraud addition for 1986, contending that he did not abuse the accounts payable account at the College in 1986, in contrast to his use of the account in 1987 and 1988. Respondent

contends that Mr. Marzullo established the account in order to receive part of his taxable income tax free. Further, respondent contends that the only difference between 1986 and the later years is that some college checks were used to pay Mr. Marzullo's personal credit card bills in 1987 and 1988.

Payments Mr. Marzullo received from the account in all 3 years were falsely claimed to be for such things as "car allowance". Mr. Marzullo is an experienced accountant. He established the accounts payable account so that a portion of his salary would not be reported to the IRS. On the other hand, he reported his full salary on loan applications and used the entire amount when calculating matching contributions for his pension. He knew these amounts were taxable but rationalized his actions by focusing on the unfairness he perceived because his sons could not take advantage of the tuition waiver as could daughters of other employees. We conclude that respondent has established by clear and convincing evidence that Mr. Marzullo committed fraud on petitioners' 1986 tax return. Accordingly, he is liable for the fraud additions to tax for 1986, as well as 1987 and 1988.

To reflect the foregoing and petitioners' concessions,

Decision will be entered
under Rule 155.