Joseph Casner, Jr. v. Commissioner.
Casner v. Commissioner
Docket No. 4117-62.
United States Tax Court
T.C. Memo 1964-277; 1964 Tax Ct. Memo LEXIS 64; 23 T.C.M. (CCH) 1683; T.C.M. (RIA) 64277; October 21, 1964
*64 Held: (1) Petitioner's books and records were inadequate to determine petitioner's taxable income for the taxable years in issue; (2) Respondent properly determined petitioner's income under the bank deposits and withdrawals method for the taxable years involved; (3) Part of the deficiencies in petitioner's income taxes for the taxable years in issue was due to fraud with intent to evade tax; (4) Imposition of the addition to tax for failure to file a declaration of estimated tax for the years 1951 through 1954 is sustained. Joseph Casner, Jr., pro se, Ridgewood Ave., Madison, Conn. Lawrence A. Wright, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies and additions to tax for the taxable years 1951 through 1956 as follows: Sec.
294(d)
Sec.
Sec.
Year
Deficiency
(1)(A) *
293(b) *
6653(b) **
1951
$ 941.08
$ 93.26
$ 470.54
1952
2,519.81
234.33
1,259.90
1953
$3,764.16
$331.49
$1,882.08
1954
483.40
34.63
$ 241.70
1955
6,723.23
3,361.61
1956
7,679.65
3,839.82
There are two issues: (1) Whether respondent properly determined petitioner's taxable income for each of the taxable years 1951 through 1956, and (2) whether part *65 of the deficiencies in petitioner's income taxes for these years was due to fraud with intent to evade tax. Findings of Fact Petitioner is an individual who resided during the taxable years 1951 through 1955 in Woodbridge, Connecticut, and during the taxable year 1956 in Madison, Connecticut. He filed his individual Federal income tax returns for the calendar years 1951 through 1954 and the calendar year 1956 with the district director of internal revenue at Hartford, Connecticut. He did not file a Federal income tax return for the taxable year 1955. During the taxable years in issue, petitioner owned and operated as a sole proprietorship East River Sales & Service, an Oldsmobile agency and garage in Madison, Connecticut. Petitioner failed to file a Schedule C with his income tax returns for each of the taxable years 1951 through 1954 and 1956. He reported no business income or loss on the summary of Schedule C on his individual return, Form 1040, for the years 1951 through 1954 and reported a $6,089 loss on item 8 "Profit (or loss) from business from separate Schedule C" on his Form 1040 return for the year 1956. He reported himself as an employee of East River Sales & Service on *66 his income tax returns for the years 1951 through 1954. On his return for the taxable year 1956, he reported himself as an employee of "East River Sales, Sole Prop." Petitioner filed withholding returnrs for each of the taxable years in issue for which he filed an income tax return. He filed a Schedule C with his income tax return for the year 1950. Petitioner's Federal income tax returns for the taxable years 1949 and 1950 were examined by an agent of the Internal Revenue Service. Onmay 23, 1952, respondent's agent issued a preliminary statement of total tax liability proposing certain deficiencies in petitioner's income taxes for these years and recommending the imposition of the 5 percent addition to tax for negligence. The report stated that the principal cause of the proposed deficiencies was an increase in business income. A downward adjustment in the depreciation allowable on rental property was made for the year 1950. Petitioner executed a Form 870 Waiver of Restrictions on Assessment and Collection of Deficiency in Tax with respect to these proposed deficiencies and additions to tax. On October 28, 1952, respondent's agent served petitioner with an official notice that the *67 books of account and records maintained by him in recording the operations of his business were insufficient for the purpose of verifying his liability for Federal income taxes and notifying him of the requirements of the law and regulations with respect to maintaining books of account and records. Petitioner made no effort to improve his method of bookkeeping following the receipt of this notice. [1] During the taxable years here in issue, petitioner maintained a sales book in which he recorded sales which were subject to the Connecticut retail sales tax. Petitioner's records for these years contain no business expense ledgers, payroll records or profit and loss statements and contain a sales register for only part of one year. During the taxable years in issue herein, *68 petitioner maintained a checking account in the name of East River Sales & Service at the Union and New Haven Trust Company, New Haven, Connecticut. The total deposits to this account during the taxable years involved were as follows: Year
Amount
1951
$ 95,099.31
1952
100,712.21
1953
136,206.39
1954
146,823.99
1955
126,156.01
1956
83,906.32
During the taxable years in issue, petitioner maintained a personal checking account at the Union and New Haven Trust Company to which he deposited $695 in 1951 and $865.15 in 1952. During the years involved, petitioner also maintained a bank account at the New Haven Savings Bank, New Haven, Connecticut. Petitioner made the following deposits to this account during the years involved: Year
Amount
1951
$1,236.00
1952
65.00
1953
6,020.00
1954
2,800.00
1955
1,330.00
1956
5,874.68
Petitioner's wife, Irma M. Casner, during the years involved, maintained a savings account at the Connecticut Savings Bank, New Haven, Connecticut. The amount of $3,650 was deposited to this account in 1951 and the amount of $2,549.50 in 1956. During the years in issue, Katherine Roche rented an apartment from petitioner at 697 Campbell Avenue. She paid $23 per month rent during the years 1951 to 1953 *69 and $30 per month rent during the years 1953 through 1956. Petitioner made no improvements to this apartment during these years. During the years in issue, Albert A. Skiff rented an apartment and garage at 697 Campbell Avenue from petitioner for which he paid $32 per month rent. Petitioner made no repairs to this apartment during the years in issue. Joseph Esposito rented business property from petitioner during the years involved for which he paid $195 rent per month. Esposito paid part of this rent by giving petitioner merchandise from his appliance store. In approximately 1950, petitioner built a showroom onto his property at 697 Campbell Avenue. Petitioner's books and records for the years involved contained no listings of rental receipts and expenses. Petitioner's net income from rents during the years involved was as follows: 1951
1952
Rental Income From
Elm Motors
$2,340.00
$2,340.00
A. Skiff
384.00
384.00
James Roche
276.00
276.00
Showroom
Total
$3,000.00
$3,000.00
Per Return as Filed
Less Expenses
Depreciation - Exhibit E
$352.50
$ 352.50
Taxes
663.23
1,104.58
Repairs
151.87
Insurance
161.38
79.01
Water
29.80
Total Expenses
$1,328.98
$1,565.89
Net Income From Rents
$1,671.02
$1,434.11
1953
1954
Rental Income From
Elm Motors
$2,340.00
$2,329.00
A. Skiff
384.00
384.00
James Roche
339.00
360.00
Showroom
Total
$3,063.00
$3,073.00
Per Return as Filed
$3,372.00
Less Expenses
Depreciation - Exhibit E
$ 352.50
$ 352.50
Taxes
1,467.84
1,515.72
Repairs
135.00
Insurance
123.32
115.43
Water
42.00
79.80
Total Expenses
$1,985.66
$2,198.45
Net Income From Rents
$1,077.34
$1,173.55
1955
1956
Rental Income From
Elm Motors
$2,340.00
$2,340.00
A. Skiff
384.00
384.00
James Roche
360.00
360.00
Showroom
Total
$3,084.00
$3,484.00
Per Return as Filed
Less Expenses
Depreciation - Exhibit E
$ 352.50
$ 352.50
Taxes
1,377.45
1,361.25
Repairs
22.50
Insurance
160.43
136.93
Water
64.20
23.20
Total Expenses
$1,977.08
$1,873.88
Net Income From Rents
$1,106.92
$1,610.12
On *70 his Federal income tax returns for the years 1951 through 1954 and the year 1956, petitioner reported the following income (or loss) from rents: Income
Year
Receipts
Expenses
(or loss)
1951
$2,699
$3,833.26
($1,134.26)
1952
2,964
3,026.27
(62.27)
1953
2,550
2,784.00
(234.00)
1954
3,372
3,871.28
(499.28)
1956
3,484
3,316.84
167.16 Petitioner sold cars through Southern Auto Sales, an automobile dealers' auction company, during the years and in the amounts as follows: Year
No. of Cars
Sales Total
1953
18
$12,070
1954
2
1,065
1955
6
5,185
1956
4
3,935 None of the sales made through this company were recorded in petitioner's books and records. Petitioner sold two automobiles to Howard Lippincott in 1955 for $2,222.25 and $3,700, respectively. Neither of these sales were recorded in petitioner's records. A sale of an automobile made by petitioner in 1955 to William Cook for $610 also does not appear in petitioner's books and records. A sale of an automobile for $2,400 made by petitioner to Howard Lippincott in 1956 appears in petitioner's sales book as a sale for $600. In 1952 petitioner sold an automobile to Huxley Motors for $2,312.36 for which no record was made in petitioner's books. The purchase price was paid by check *71 which was used by petitioner to pay a bill at Henderson Chevrolet Company. In 1956 Fred Bennett purchased a car from petitioner for $1,600 which was paid for by a check for $1,000 and $600 in cash. The $1,000 check was applied by petitioner to the payment of a personal mortgage note. In 1956 Anna Lohne purchased a car from petitioner for $2,641.25. The money received from Anna was deposited by petitioner in his personal savings account at the New Haven Savings Bank. During the taxable years involved, petitioner financed some automobile purchases for customers at commercial interest rates. Petitioner kept no record of this interest income. In 1952 petitioner sold an automobile to Edward Goldsmith and financed the sale. This sale does not appear in petitioner's records. Petitioner maintained gas pumps at East River Sales & Service and also made automobile repairs there for which no books and records were maintained. During the years involved, East River Sales & Service purchased gasoline for its pumps in the following amounts: Year
Amount
1951
$3,105.74
1952
2,625.22
1953
3,004.40
1954
1,665.88
1955
1,369.42
1956
1,784.70 In 1954 petitioner did repair work for Huxley Motors in the approximate amount *72 of $400 for which no record was kept. Respondent in his statutory notice of deficiency determined petitioner's net income by the bank deposits and withdrawals method to be as follows: DEPOSITS
1951
1952
1953
Union & New Haven Trust Co.
$ 95,099.31
$100,712.21
$136,206.39
East River Sales & Service
(Business checking account)
Union & New Haven Trust Co.
695.00
865.15
Joseph Casner, Jr.
(Personal checking account)
New Haven Savings Bank
1,236.00
65.00
6,020.00
Acct. #274684
(Joseph Casner, Jr.)
Connecticut Savings Bank
3,650.00
Total Deposits
$100,680.31
$101,642.36
$142,226.39
Add Rent Receipts Not Deposited
A. Skiff
384.00
384.00
384.00
James Roche
276.00
276.00
339.00
Elm Motors - Appliances
416.34
224.40
729.48
Elm Motors Fuel Oil
Additional Rents Disclosed on
return
Unable to contact 3rd party-E.
Maltese
Add Sales Receipts Not Deposited
2,312.36
Total Deposits & Receipts
Not Deposited
$101,756.65
$104,839.12
$143,678.87
Less: Non-Income Deposits & Items
8,348.41
5,739.16
4,835.51
Gross Receipts
$ 93,408.24
$ 99,099.96
$138,843.36
Gross Receipts
$ 93,408.24
$ 99,099.96
$138,843.36
Less: Purchases, Automobile
78,478.13
78,747.24
114,823.29
business
Less: Operating Expenses &
7,910.43
8,320.45
9,323.69
Deductions
Less: Rental Expenses &
1,328.98
1,565.89
1,985.66
Deductions
Add: Estimated cash receipts not
3,000.00
3,000.00
3,000.00
deposited
Add: Other income
N.H. Savings Bank Acct. #274684
2.40
1.31
13.90
Conn. Savings Bank Acct. #304149
76.77
8.12
6.82
Dividends (After 100% Exclusion)
Taxable Portion of Capital Gain
Adjusted Gross Income
$ 8,769.87
$ 13,475.81
$ 15,731.44
Less: Standard Deduction
876.99
1,000.00
1,000.00
Exemptions
Net Income as corrected
$ 7,892.88
$ 12,475.81
$ 14,731.44
*73 DEPOSITS
1954
1955
1956
Union & New Haven Trust Co.
$146,823.99
$126,156.01
$ 83,906.32
East River Sales & Service
(Business checking account)
Union & New Haven Trust Co.
Joseph Casner, Jr.
(Personal checking account)
New Haven Savings Bank
2,800.00
1,330.00
5,874.68
Acct. #274684
(Joseph Casner, Jr.)
Connecticut Savings Bank
2,549.50
Total Deposits
$149,623.99
$127,486.01
$ 92,330.50
Add Rent Receipts Not Deposited
A. Skiff
384.00
384.00
384.00
James Roche
360.00
360.00
360.00
Elm Motors - Appliances
195.00
511.85
195.00
Elm Motors Fuel Oil
400.00
Additional Rents Disclosed on
return
Unable to contact 3rd party-E.
299.00
Maltese
Add Sales Receipts Not Deposited
6,075.00
Total Deposits & Receipts
Not Deposited
$150,861.99
$128,741.86
$ 99,744.50
Less: Non-Income Deposits & Items
2,217.17
670.16
5,971.22
Gross Receipts
$148,644.82
$128,071.70
$ 93,773.28
Gross Receipts
$148,644.82
$128,071.70
$ 93,773.28
Less: Purchases, Automobile
132,421.42
93,599.12
68,404.72
business
Less: Operating Expenses &
11,618.07
12,751.23
8,725.36
Deductions
Less: Rental Expenses &
2,198.45
1,977.08
1,873.88
Deductions
Add: Estimated cash receipts not
3,000.00
3,000.00
3,000.00
deposited
Add: Other income
N.H. Savings Bank Acct. #274684
.33
1.10
99.36
Conn. Savings Bank Acct. #304149
6.10
4.12
29.35
Dividends (After 100% Exclusion)
230.90
Taxable Portion of Capital Gain
6,484.57
Adjusted Gross Income
$ 5,413.31
$ 22,749.49
$ 24,613.50
Less: Standard Deduction
541.33
1,000.00
1,000.00
Exemptions
3,000.00
3,000.00
Net Income as corrected
$ 4,871.98 *
$ 18,749.49 *
$ 20,613.50 *
*74 Respondent's analysis of petitioner's bank deposits and withdrawals was made from original bank deposit slips, bank statements and cancelled checks. Information concerning rental income and undeposited proceeds from automobile sales was obtained by personal contact with tenants and purchasers. In his reconstruction of petitioner's income respondent made proper allowances for nonincome deposits and made a reasonable estimate of undeposited cash receipts. Petitioner realized a capital gain in the amount of $11,969.15 in 1956 upon the sale of his residence in Woodbridge, Connecticut. On July 21, 1959, petitioner was indicted by the Grand Jury of the United States District Court for the District of Connecticut by Criminal Indictment No. 9913. On October 31, 1960, petitioner was indicted by the Grand Jury of the United States District Court for the District of Connecticut by Criminal Indictment No. 10,241. Counts I and III of Criminal Indictment No. 10,241 charged that petitioner willfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him by filing and causing to be filed a false and fraudulent income tax return *75 in violation of the provisions of section 145(b) of the Internal Revenue Code of 1939 and section 7201 of the Internal Revenue Code of 1954 for the calendar years 1953 and 1956, both respectively. Count II of this indictment charged that petitioner willfully and knowingly failed to make an income tax return for the year 1955. Criminal Indictment No. 9913 was identical to Criminal Indictment No. 10,241 except that the former charged in Counts I and III that petitioner filed a false and fraudulent joint return on behalf of himself and his wife. On November 29, 1960, petitioner appeared in person and without counsel before the United States District Court for the District of Connecticut and entered a plea of not guilty to the charges set forth in Criminal Indictment No. 10,241. Petitioner was advised of his right to counsel by the court and he waived this right. After a trial by jury on the merits, petitioner was convicted on Counts I and III of Criminal Indictment No. 10,241 and sentenced to one year imprisonment on each count, with sentences to run concurrently. Petitioner was acquitted on Count II of Criminal Indictment No. 10,241. Petitioner was a deputy zone collector for the Internal *76 Revenue Service from December 18, 1942, through July 3, 1943. Petitioner's books and record were inadequate to enable respondent to determine petitioner's taxable income for the years 1951 through 1956. Respondent properly determined petitioner's taxable income for the years 1951 through 1956 by use of the bank deposits and withdrawal method. Part of the deficiencies in petitioner's income taxes for the years 1951 through 1956 was due to fraud with intent to evade tax. Opinion The first issue is whether respondent properly determined petitioner's taxable income for the years in issue by the bank deposits and withdrawals method. If a taxpayer's books and records are inadequate clearly to reflect his income, the Commissioner of Internal Revenue may compute his income by a method which in the Commissioner's opinion clearly does reflect his income. Harold E. Harbin, 40 T.C. 373; Anthony E. Spitaleri, 32 T.C. 988; Halle v. Commissioner, 175 F. 2d 500 (C.A. 2), affirming 7 T.C. 245; Section 446(b), Internal Revenue Code of 1954; Section 41, Internal Revenue Code of 1939. The only record of his business operations kept by petitioner was a sales book in which he recorded those sales which *77 were subject to the Connecticut retail sales tax. The evidence establishes numerous retail sales made by petitioner which were not recorded in this book and at least one instance in which a sale was recorded at $1,800 less than the actual selling price. Petitioner kept no records of income from rents, interest or repair work. Neither did petitioner's records contain any profit and loss statements, business expense ledgers or payroll records book and he retained a sales register for only part of one year. In the absence of records from which petitioner's income could be calculated, respondent determined petitioner's income according to the bank deposits and withdrawals method. Respondent's agent testified concerning the detailed manner in which he analyzed the income and nonincome deposits to petitioner's bank accounts and segregated the personal and business expenditures represented by his cancelled checks. Business expenditures and the standard deduction were allowed in arriving at petitioner's net income. We are satisfied that respondent's agent used due care in reconstructing petitioner's income. In view of all the evidence, we hold that resort to the bank deposits and withdrawals *78 method was necessary to determine petitioner's income for the taxable years involved and that respondent properly applied this method in determining such income. The second issue is whether part of the deficiencies in petitioner's income taxes for the taxable years in issue was due to fraud with intent to evade tax. Under the recent decision of John W. Amos, 43 T.C. - (October 21, 1964), petitioner is estopped from denying fraud for the years 1953 and 1956. In addition, we think the evidence presented clearly establishes fraud for these years, as it does for the remaining years in issue, and we so hold. The burden of proving fraud for each of the years in issue rests with respondent. Section 7454, Internal Revenue Code of 1954; section 1112, Internal Revenue Code of 1939; Madeline V. Smith, 32 T.C. 985; John Marinzulich, 31 T.C. 487; Arlette Coat Co., 14 T.C. 751. The following evidence of fraud produced by respondent sufficiently meets this burden; (1) Petitioner's failure to keep adequate records; (2) his failure to improve his record-keeping after official notice that his records were inadequate; (3) his consistent understatement of substantial amounts of income: (4) his failure *79 to report specific items of interest income and income from repair work; (5) his substantial overestimation of rental expenses; (6) his failure to file a return for 1955; (7) his failure to file a Schedule C for the years in which he filed a return; (8) his awareness of the requirements of the internal revenue laws with respect to the reporting of taxable income by reason of his former employment with the Internal Revenue Service; and (9) his conviction of the criminal charges of attempting to evade and defeat the payment of income taxes for the years 1953 and 1956 by filing false and fraudulent income tax returns, the conviction for which has been held by this Court on numerous occasions to constitute strong evidence of fraud. Cf. Abraham Galant, 26 T.C. 354; Eugene Vassallo, 23 T.C. 656. In view of all the evidence, we hold that at least part of the deficiency in petitioner's income taxes for each of the taxable years 1951 through 1956 was due to fraud with intent to evade tax. The additions to tax under section 293(b) for the taxable years 1951 through 1953 and section 6653(b) for the taxable years 1954 through 1956 are therefore sustained. The imposition of the addition to tax *80 under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for failure to file a declaration of estimated tax for each of the years 1951 through 1954 is also sustained. Petitioner has given no explanation as to why he failed to file a declaration of estimated tax in these years and the evidence wholly fails to establish that his failure to file such a declaration was due to reasonable cause. Respondent had conceded capital improvement to petitioner's residence in Woodbridge in the amount of $1,000 and petitioner has failed to establish that improvements in excess of this amount were made. Because respondent's concession requires an adjustment in petitioner's basis in this property for the purpose of computing his capital gain upon its sale. Decision will be entered under Rule 50. Footnotes
*. I.R.C. of 1939. ↩
**. I.R.C. of 1954.↩
1. Official transcript of the testimony, p. 309. Q. [Mr. Wright]: My original question was, why didn't you change your method of bookkeeping, your business records? A. [Mr. Casner]: I was perfectly satisfied with my bookkeeping records. Q. [Mr. Wright]: Even though you had been served with a notice from the Internal Revenue Service that your records were inadequate? A. [Mr. Casner]: I was still satisfied with my records.↩
*. Taxable Income as Corrected.↩