JOHN L. RAYWARD and JOYCE C. RAYWARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rayward v. Comm'r
Docket Nos. 4306-68, 6194-69.
United States Tax Court
T.C. Memo 1973-66; 1973 Tax Ct. Memo LEXIS 222; 32 T.C.M. (CCH) 286; T.C.M. (RIA) 73066; March 22, 1973, Filed Barry D. Gordon and Bernard Goldstein, for the respondent. QUEALY
*222 MEMORANDUM FINDINGS OF FACT AND OPINION
QUEALY, Judge: The respondent determined deficiencies in income taxes and additions to the tax to be due from the petitioners as follows: Docket No.
Year
Deficiency in
Addition to the Tax Sec.
Income Tax
6653(b) [1]
6194-69
1958
$54,881.54
$27,440.77
6194-69
1959
120,156.96
60,078.48
6194-69
1960
116,089.54
58,044.77
6194-69
1961
174,716.62
87,358.31
6194-69
1962
536,947.32
268,473.66
4306-68
1963
1,558,638.41
779,319.21
*223 2 The petitioners herein directed their attorneys to withdraw from these consolidated cases and to allow these cases to go uncontested. Accordingly, no appearance was made by or on behalf of the petitioners. Certain concessions having been made by the respondent, those issues remaining for decision are as follows: (1) Whether the respondent is barred by the period of limitations from the assessment and collection of deficiencies in income taxes and additions to the tax for the taxable years 1960 to 1963, inclusive. (2) Whether any part of the underpayment of taxes by John L. Rayward [2] for the taxable years 1958 through 1963 is due to fraud. 3 FINDINGS OF FACT The petitioners, John L. Rayward and Joyce C. Rayward, are husband *224 and wife whose legal residence at the time of the filing of the petitions herein was is Lausanne, Switzerland. Joint United States income tax returns for the taxable years 1958 to 1963, inclusive, were duly filed by petitioners with the district director of internal revenue, Manhattan, New York. At all times here pertinent, John L. Rayward Company (hereinafter sometimes referred to as "Rayward Co." or "the partnership") was a limited partnership doing business at premises located at 1710 Summer Street, Stamford, Connecticut. The partnership filed its income tax returns on the basis of a fiscal year ending October 31 and utilized the accrual method of accounting. Partnership income tax returns were duly filed for the fiscal years ended October 31, 1958 to October 31, 1963, inclusive, with the district director of internal revenue, Manhattan, New York. The two general partners of 4 John L. Rayward Company were John L. Rayward and Joyce C. Rayward. Trusts for the benefit of their children, of which John L. Rayward was trustee, were the limited partners. During the years in issue, petitioner was engaged in the selling of paper and paper pulp through the partnership. One *225 source of the paper and pulp products sold by John L. Rayward Company during the years 1960 through 1963 was the Weyerhaeuser Co. (hereinafter referred to as "Weyerhaeuser"). In September of 1960, one Christy George Peters organized a corporation in Panama under the name of Marguia Compania Naviera. In November 1960, John L. Rayward purchased the stock of Marguia Compania Naviera and caused the name of that company to be changed to John L. Rayward, Inc. (hereinafter sometimes referred to as "Rayward, Inc."). On November 1, 1960, petitioner opened a checking account, numbered XXX X XX9435, at the Chase Manhattan Bank, in the name of John L. Rayward Co., Inc. Said account 5 remained open until January 2, 1963 during which period the sole signatory thereon was John L. Rayward. During the years 1958 through 1962, petitioners maintained their personal residence at 82 Frogtown Road, New Canaan, Connecticut, a home designed by Frank Lloyd Wright and owned by John L. Rayward Company. The cost of the home was approximately $250,000. Throughout the years in question, petitioners paid no more than $300 per month to Rayward Co. ostensibly as rent for their personal residence.
*226 For the fiscal years ended October 31, 1958 through October 31, 1962, the books and records of John L. Rayward Company, prepared and maintained under the direct supervision and control of John L. Rayward, did not reflect that the "Building & Equipment - New Canaan" was a residence nor did they reflect that the petitioners were the tenants. Rayward Co.'s books and records for the fiscal year ended October 31, 1963, were unavailable to either the respondent or this Court. 6 On its income tax returns for the fiscal years 1958 to 1962, inclusive, John L. Rayward Company deducted as business expenses the costs of maintaining the petitioners' personal residence including utilities, taxes, repairs, fuel, casualty losses and other miscellaneous expenses. It also deducted as travel and entertainment amounts expended for food and liquor consumed by the family not associated with any business purpose of John L. Rayward Company. Rayward Co. also claimed deductions for depreciation on the personal residence and furniture used by the petitioners as follows: Depreciation for
Fiscal Year Ended October 31
Residence
Furniture
1958
$13,885.59
$ 11,429.10
1959
10,666.38
8,256.90
1960
8,704.06
6,402.53
1961
8,960.53
5,818.72
1962
3,781.15
4,470.59
*227 In addition to the foregoing, the partnership paid and deducted as such the salaries of two domestics 7 employed by the petitioners in their personal residence although one of said individuals cleaned the partnership's premises only on infrequent occasion. In addition to the bookkeeping, virtually all other functions of the partnership were controlled by the petitioner. By his direction, a purchase and sales journal was maintained by the partnership wherein a purchase of paper or pulp products by Rayward Co. was reflected on the right-hand page of the journal, with the alleged sale of that particular product entered on the same line on the left-hand page. From documentary evidence not contained in the books of the partnership, it appears that in many instances during the fiscal years 1960, 1961, and 1962, the purchasers were entirely fictitious, the subject of the sale in actuality having gone to a different buyer at a greater price. A "paper profit" on such sales, usually in the amount of either $100 or 1 to 1-1/2 percent of the sales price, was thereby reflected on the books of the partnership and reported in the aggregate in its income tax returns. The 8 proceeds *228 in excess of the profit reflected in Rayward Co.'s books were then diverted to the checking account of Rayward, Inc., at the Chase Manhattan Bank. In all instances, Weyerhaeuser was the source of the goods resold by Rayward Co. A representative sampling of the specific transactions in which this scheme was utilized appears on the following charts: [3]
FISCAL YEAR ENDED OCTOBER 31, 1960
Customer and Sales Price Per
Actual Customer and Sales Price
Rayward Co. Books
Cost to
Customer
Price
Customer
Price
Rayward Co.
$14,169.65
International
$14,269.63
Korea Bank Note
$15,962.27
Trading
Printing Co.
104,378.44
Australasian
104,478.44
Australasian
107,606.63
Overseas
Newsprint Mills,
Ltd.
50,581.57
International
50,681.57
Korea Bank Note
53,969.24
Trading
Printing Co.
18,500.62
International
18,600.62
Sam Poong Paper
19,999.50
Trading
Mfg. Co.
69,339.32
International
69,439.32
Chung-Gu Paper
74,483.16
Trading
Mfg. Co.
$256,969.60
$257,469.58
$272,020.80
*229 FISCAL YEAR ENDED OCTOBER 31, 1960
Cost to
Profit Per
Profit
Rayward Co.
Rayward Co.
Understated
Books
$14,169.65
$99.98
$1,692.64
104,378.44
100.00
3,128.19
50,581.57
100.00
3,287.67
18,500.62
100.00
1,398.88
69,339.32
100.00
5,043.84
$256,969.60
$499.98
$14,551.22
FISCAL YEAR ENDED OCTOBER FISCAL YEAR ENDED OCTOBER 31, 1961
Customer and Sales Price Per
Actual Customer and Sales Price
Rayward Co. Books
Cost to
Customer
Price
Customer
Price
Rayward Co.
$18,673.27
International
$18,748.27
Chung-Gu Paper
$19,934.56
Trading Co.
Mfg. Co.
62,458.13
Pacific Pulp &
62,608.13
Keng Hua Paper
64,898.98
Sales
Products
3,903.53
Australasian
3,878.53
Textile Cones &
3,985.60
Overseas
Tubes Pty. Ltd.
4,094.70
Australasian
4,119.70
Textile Cones &
4,183.37
Overseas
Tubes Pty. Ltd.
8,358.18
Paper Pulp &
8,383.18
Worldwide Trading
8,683.48
Paper Sales
Co.
31,153.99
Pacific Pulp &
29,891.09
Scarburgh Co.
30,685.00
Paper
Inc.
582.10
General Offset
604.64
Press
730.8
General Offset
1,138.88
Press
31,203.99
32,428.52
54,308.19
International
13,560.20
Keyang Mercentile
14,997.00
Trading Co.
Co.
27,204.20
Chun Yang
30,200.00
Industrial Co.
13,643.79
Shin Poong
15,202.68
Industrial Co.
54,408.19
60,399.68
8,187.88
International
8,212.88
Chung-Gu Paper
8,740.44
Trading Co.
Mfg. Co.
7,381.42
Pacific Pulp
7,455.23
Worldwide Trading
7,668.70
Sales
Co.
9,639.94
Pacific Pulp
9,668.86
Wordlwide Trading
9,743.89
Sales
Co.
$208,159.23
$208.686.96
220,667.22
*230 FISCAL YEAR ENDED OCTOBER FISCAL YEAR ENDED OCTOBER 31, 1961
Cost to
Profit Per
Profit
Rayward Co.
Rayward Co.
Understated
Books
$18,673.27
$75.00
$1,186.29
62,458.13
150.00
2,290.85
3,903.53
(25.00)
107.07
4,094.70
25.00
63.67
8,358.18
25.00
300.30
31,153.99
50.00
1,224.53
54,308.19
100.00
5,991.49
8,187.88
25.00
527.56
7,381.42
73.81
213.47
9,639.94
28.92
75.03
$208,159.23
$527.73
$11,980.26 11 FISCAL YEAR ENDED OCTOBER 31, 1962
Customer and Sales Price Per
Actual Customer and Sales Price
Rayward Co. Books
Cost to
Customer
Price
Customer
Price
Rayward Co.
$2,812.86
Inter American
$2,855.05
Mimo, S.A.
$3,066.96
Trading
14,104.20
Far Eastern
56,573.52
Paper & Pulp
59,006.98
Enterprises
Conversions Ltd.
40,821.56
54,925.76
32,806.38
Far Eastern
33,790.57
Tribeni Tissues
36,275.01
Enterprises
Private Ltd.
86,085.75
Far Eastern
87,377.04
Cong Ty Giay Va
88,748.20
Enterprises
80,670.94
81,670.94
Hoa Pham Dong Nai
83,165.92
166,756.69
169,047.98
171,914.12
81,991.97
Far Eastern
97,164.21
Paper & Pulp
105,805.80
Enterprises
Conversions Ltd.
13,736.31
95,728.28
60,593.96
Far Eastern
61,502.87
Titaghur Paper
66,776.40
Enterprises
Mills Co. Ltd.
$413,623.93
$420,934.20
$442,845.27
*231 FISCAL YEAR ENDED OCTOBER 31, 1962
Cost to
Profit Per
Profit
Rayward Co.
Rayward Co.
Understated
Books
$2,812.86
$42.19
$211.91
14,104.20
1,647.76
2,433.46
40,821.56
54,925.76
32,806.38
984.19
2,484.44
86,085.75
2,291.29
2,866.14
80,670.94
166,756.69
81,991.97
1,435.93
8,641.59
13,736.31
95,728.28
60,593.96
908.91
5,273.53
$413,623.93
$7,310.27
$21,911.07 12 In the aggregate, the purchase and sales journal of John L. Rayward Company for the fiscal year ended October 31, 1960 reflected purchases from Weyerhaeuser of $520,551.44 and related sales to fictitious purchasers of $521,431.35. The profit of $879.91 from these sales was reflected in the books and records of the partnership and reported in its income tax return for the fiscal year 1960. The actual gross sales in these transactions were $542,823.34, resulting in an understatement of profit of $21,391.99 in the partnership's return for the fiscal year ended October 31, 1960. For the fiscal year ended October 31, 1961, the purchase and sales journal of John L. Rayward Company reflected purchases of $2,279,971.41 from which related sales to fictitious purchasers *232 were recorded in the amount of $2,317,716.17, resulting in a reported profit of $37,744.76. In actuality the gross sales in these transactions amounted to $2,465,507.00 resulting in a specific understatement of profit in the income tax return of the partnership for its fiscal year 1961 of $147,790.83. 13 For the fiscal year ended October 31, 1962, Rayward Co.'s purchase and sales journal reflected purchases of $3,777,972.97, resulting in a reported profit of $60,577.43. The actual gross sales in these transactions were $4,153,936.11, resulting in a specific understatement of profit of $375,963.14 in the partnership return for the fiscal year ended October 31, 1962. The specific understatement of profits on the partnership income tax returns of John L. Rayward Company for its fiscal years 1960, 1961, and 1962 in the amounts of $21,391.99, $147,790.83 and $375,963.14, respectively, produced a corresponding understatement of income on the petitioners' individual income tax returns for their taxable years 1960, 1961, and 1962. We find that this understatement was due to fraud on the part of John L. Rayward with the intent to evade tax. For the fiscal year 1963, for which *233 the partnership's books and records were unavailable, John L. Rayward Company's income tax return reflected gross 14 sales of $3,023,498.10. The respondent presented evidence establishing transactions producing gross sales of $1,296,091.34. The proceeds of these sales were deposited in the following accounts: John L. Rayward Co., Inc., Chase Manhattan Bank, New York; International Trading Co., Swiss Bank, Lucerne, Switzerland; International Sales and Services, Bank of Nova Scotia, Nassau Branch; John L. Rayward Co., Inc., Swiss Bank, Lucerne, Switzerland; International Sales and Development Corporation, Swiss Bank, Lucerne, Switzerland; International Sales and Development Corporation, Bank of Nova Scotia, Nassau Branch; John L. Rayward Co. Limited, Swiss Bank, Lucerne, Switzerland; and John L. Rayward Co., Swiss Bank, Lucerne, Switzerland. Gross deposits in the Bank of Nova Scotia, Nassau Branch, were $1,849,093.76. No information was presented with respect to the amount of deposits in the remaining banks. Also in its fiscal year 1963, John L. Rayward Company accrued commission income from Weyerhaeuser in the amount of $40,081.02. 15 OPINION The questions for *234 determination are (1) whether the income tax returns of the petitioners for the taxable years 1958 to 1963, inclusive, were fraudulent and (2) whether the assertion of deficiencies for the years 1960 to 1963, inclusive, is barred by the statute of limitations. With respect to the taxable years 1958 and 1959, respondent's motion to dismiss for lack of prosecution solely as to the deficiencies determined was granted at the trial of this case upon consideration of the withdrawal of petitioner's counsel by instruction of the petitioners, the evidence that they no longer wished to contest the respondent's determinations, and the fact that those years were not barred by the expiration of the statute of limitations. Respondent admits that he must prove fraud for those years for the additions to the tax of section 6653(b) to be sustained. Section 7454(a). For the taxable years 1960 to 1963, inclusive, the statute of limitations on assessment and collection has expired unless it is here found that the returns 16 filed were "false or fraudulent * * * with the intent to evade tax," section 6501(c) (1), or, in the case of the taxable year 1963 that the petitioners omitted "from gross *235 income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." Section 6501(e) (1) (A). Our initial inquiry will be directed to the question of fraud since its resolution is determinative of the statute of limitations issue for all of the years except 1963. We are not concerned herein with the redetermination of any deficiency for any year due to the fact that petitioners have chosen not to contest those adjustments with respect to which they have the burden of proof. Whether fraud exists is a question of fact to be determined upon consideration of the entire record. M. Rea Gano, 19 B.T.A. 518 (1930). Under section 7454(a) the burden of proving fraud is on the respondent, and such proof must be clear and convincing. 17 Kreps v. Commissioner, 351 F. 2d 1 (C.A. 2, 1965), affirming 42 T.C. 660 (1964); Goldberg v. Commissioner, 239 F. 2d 316 (C.A. 5, 1956); M. Rea Gano, supra. During each of its fiscal years 1958 through 1962, John L. Rayward Company deducted on its partnership income tax returns the expenses, including depreciation, utilities, *236 taxes, repairs, fuel, casualty losses, and other miscellaneous expenses, attributable to the maintenance and operation of the house and surrounding grounds occupied by John L. Rayward and his family. In its books and records and its tax returns, all of which were prepared and maintained with the knowledge and under the supervision of John L. Rayward, those expenses were disguised in such a manner as to make them appear to be legitimate operational expenses of the partnership. Nowhere did the books reflect that the house carried as "Building & Equipment - New Canaan" was in actuality such a residence or that it was "rented" to petitioners. A separate sheet in the general ledger 18 reflected "rental income" of approximately $3,000 per year but did not reflect the source or nature of that income. The expenses paid and deducted by the partnership attributable to the property averaged approximately ten times that amount annually. Moreover, the partnership paid and deducted on its returns the salaries paid to two maids regularly employed at the residence and deducted as travel and entertainment amounts expended for liquor and food there consumed by the Rayward family. As a *237 result of the deductions thereby claimed, the distributable income of the partnership was substantially reduced, resulting in corresponding reductions in the income of the petitioners. While we do not deny that a partnership might legitimately hold properties for rental by its partners, the consistently flagrant utilization of the partnership's funds for the payment of personal expenses, the imbalance between the rental income reported and the expenses deducted, and the deliberate imprecision of the partnership's books and tax returns conclusively indicates to this 19 Court an intent by John L. Rayward to fraudulently evade the payment of his lawful taxes for the years 1958 to 1962, inclusive. See Hicks Co., 56 T.C. 982 (1971). For the years 1960, 1961, and 1962, the evidence of fraud is compounded by the falsification of the partnership's books with respect to its sales. Through an obviously preconceived plan, John L. Rayward diverted substantial sums from the regular partnership accounts into the account of John L. Rayward Co., Inc., at the Chase Manhattan Bank. The diversion of these funds was not to be gleaned by even the most scrupulous examination of the *238 books of the partnership and the pains taken by John L. Rayward to falsify those books could only have been matched by the efforts of the respondent's agent in discovering those falsifications. There can be no doubt that petitioner deliberately and with the intent to evade tax caused the books of the partnership to be falsified thereby reflecting a substantial understatement of income on its income tax returns. 20 That this understatement was intended to effect a corresponding unlawful reduction of personal income taxes is equally not subject to doubt. See Jacob C. Ehrlich, 31 T.C. 536 (1958). Unfortunately, with respect to the year 1963, we are constrained to reach a contrary result. The books and records of the partnership for the fiscal year 1963 were unavailable. There are indications in the record that those records were allegedly lost in transport and the respondent has neither introduced evidence establishing that they were deliberately destroyed or secreted by the petitioner as might indicate fraud nor has he requested any findings of fact with respect thereto. Accordingly, we can draw no inference favorable to either respondent or petitioner by virtue *239 of their absence. In an attempt to meet his burden, respondent has introduced evidence of gross sales during the partnership's fiscal year 1963 of $1,296,091.34 intending to show a pattern of understatement similar to that of earlier years. However, without evidence 21 of specific transactions where the amount was understated or documentation of the utilization of a fictitious purchaser, we cannot presume that the gross sales established were not included in the gross sales of $3,023,498.10 reported by the partnership. Similarily, respondent has established that the partnership accrued an item of commission income from Weyerhaeuser in its fiscal year 1963 in the amount of $40,081.02. However, the record establishes that such items were also accrued in earlier years, and an examination of the returns for those years does not indicate that they were separately listed on the returns. It may therefore be presumed either that (1) the items were never reported in any of the years or (2) the items were included in the "Gross receipts or gross sales" of the partnership's returns in each of the years, which is not unlikely since all of Rayward Co.'s income was in the nature of *240 commissions. We find no basis for adopting one over the other of those theories. 22 Faced with a lack of evidence indicating that there was a specific understatement of gross sales or the omission of a specific item of income, we are left only with our suspicion rather than the required "clear and convincing proof." W. A. Shaw, 27 T.C. 561 (1956), affd. 252 F. 2d 681 (C.A. 6, 1958); Arlette Coat Co., 14 T.C. 751 (1950). "Fraud * * * is never imputed and we should not reach a conclusion of fraud upon circumstances which at most create suspicion." Estate of Dorothy E. Beck, 56 T.C. 297, 372 (1971); Tsuneo Otsuki, 53 T.C. 96 (1969). Respondent also seeks to prove fraud, or in the alternative an omission in excess of 25 percent of the amount of gross income stated in petitioners' return, by a showing of unexplained bank deposits in numerous accounts. As is the case with respect to fraud, the burden of proof as to the existence of the 25 percent omission in upon the Commissioner. Philipp Bros. Chemicals, Inc. (Md.), 52 T.C. 240 (1969), affd. 435 F. 2d 53 (C.A. 2, 1970). He must establish *241 the amount of gross income stated in the return and 23 the amount of income properly includable therein which has been omitted. Nadine I. Davenport, 48 T.C. 921 (1967); Elizabeth H. Bardwell, 38 T.C. 84 (1962), affd. 318 F. 2d 786 (C.A. 10, 1963). Only the amount deposited in one bank is known, and the source of those funds is not established. Unlike situations where reported income is inadequate to account for the deposits made, [4] here "it is as consistent with * * * innocence as with fraud, that what * * * [the partnership] received was either included in * * * reported income or represented collections on previously accrued accounts. We cannot base a finding of fraud [or a 25 percent omission] on such a record." Anthony E. Spitaleri, 32 T.C. 988, 993 (1959). While the suspicious nature of the facts presented with respect to 1963 cannot be denied, on the whole record we cannot find that petitioners' return for that year was fraudulent or 24 that in excess of 25 percent of gross income was omitted. Therefore, the statute of limitations bars the assessment and collection of any deficiency from the petitioners *242 for their taxable years 1963. In accordance with the foregoing, Decision will be entered for respondent in docket No. 6194-69, and Decision will be entered for petitioners in docket No. 4306-68. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Joyce C. Rayward is a petitioner herein by reason of having filed joint returns with her husband. Hereinafter, references to "petitioner" are to John L. Rayward. Pursuant to the provisions of sec. 6653(b), the respondent has conceded that Joyce C. Rayward is not liable for any additions to the tax for fraud. ↩
3. In the interest of brevity only a representative number of transactions are included in the accompanying charts since respondent need only prove that "any part of any underpayment * * * of tax * * * is due to fraud * * * ." Sec. 6653(b). ↩
4. See, e.g., Arthur Engel, a Memorandum Opinion of this Court dated July 31, 1952; Benjamin E. Lewis, T.C. Memo. 1957-158↩.